FILED
United States Court of Appeals
Tenth Circuit

September 18, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DANA A. MILLER,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration,

Defendant-Appellee.

No. 11-7076
(D.C. No. 6:10-CV-00333-KEW)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **EBEL**,
Circuit Judge.

Dana A. Miller appeals from a district court order affirming the

Commissioner's denial of her applications for social security disability and

supplemental security income benefits. "We independently review the

Commissioner's decision to determine whether it is free from legal error and

supported by substantial evidence." *Krauser v. Astrue*, 638 F.3d 1324, 1326

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(10th Cir. 2011).  Exercising jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we affirm for the reasons set forth below.

## I.  Background

Ms. Miller was born in 1976 and was thirty-three years old at the time of the Commissioner's final decision.  She has an eighth grade education and has worked as a grocery cashier, a waitress, and a cook.  She sought benefits based on hand pain/arthritis, dizzy spells, bad knees, migraines, asthma, seizures, obsessive compulsive disorder (OCD), depression, and anxiety.  *See* Admin. R. at 631-35, 638-41.

Following administrative denials of her claims for benefits, Ms. Miller had three hearings before an administrative law judge (ALJ).  In a ten-page, single-spaced decision, the ALJ concluded at steps four and five of the controlling five-step sequential analysis that Ms. Miller was not disabled.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing five steps); *Murrell v. Shalala*, 43 F.3d 1388, 1389 (10th Cir. 1994) (recognizing benefit of alternative dispositions in the social security review process).  He found Ms. Miller had six severe impairments (degenerative arthritis and levoscoliosis in the lumbar spine, a seizure disorder, a psychological pain disorder, depression, and a personality disorder), but that her impairments did not meet or medically equal one of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  In particular, as relevant here, the ALJ found Ms. Miller did not meet the "Paragraph B" criteria for Listing 12.08

(Personality Disorders) because she was not markedly impaired in any functional areas and had no episodes of mental decompensation of extended duration. The ALJ also found Ms. Miller not entirely credible and determined that she possessed the residual functional capacity (RFC)

> to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) *except* lift/carry 20 pounds occasionally, 10 pounds frequently; stand/walk for six hours out of an eight hour workday; sit for eight hours out of an eight hour workday; cannot climb ladders, ropes, and scaffolding; and should avoid hazardous and fast machinery, unprotected heights, driving, and pools of water. Mentally, the claimant can do moderate to comple[x] work in a habituated work setting.

Admin. R. at 21 (emphasis added); *see Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (observing that "the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC," and that the "the ALJ's credibility and RFC determinations are [therefore] inherently intertwined"). At step four, the ALJ concluded that Ms. Miller was not disabled because she could return to her past relevant work (PRW) as a grocery cashier. Continuing to step five, the ALJ concluded in the alternative that even if Ms. Miller could not perform her PRW, she was not disabled because she possessed the RFC to perform other work that exists in the regional and national economy.

The Appeals Council denied review, making the ALJ's decision the final agency determination, and the district court affirmed. This appeal followed.

## II. Discussion

Although Ms. Miller lists four issues on appeal, she interjects numerous conclusory sub-issues and passing objections, many of which are poorly developed. We will consider and discuss only those of her contentions that have been adequately briefed for our review. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (observing that under Fed. R. App. P. 28, "a brief must contain . . . more than a generalized assertion of error" (internal quotation marks omitted)); *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) ("The scope of our review . . . is limited to the issues the claimant . . . adequately presents on appeal." (internal quotation marks omitted)).[1] Accordingly, we focus on Ms. Miller's claims that that the ALJ failed to: (1) properly consider opinion evidence from Wanda Manos, a mental health counselor; (2) perform a proper credibility determination; and (3) make proper determinations at steps four and five of the sequential evaluation process.

## A.     Wanda Manos' Opinion

Ms. Manos, an outpatient counselor at Creoks Behavioral Health Services, wrote a letter in 2009 regarding Ms. Miller's functioning. In it, Ms. Manos opined

---

[1]     For example, we deem waived what is identified as the fourth issue on appeal. It consists of a conclusory, one-paragraph assertion recommending that an "investigation" be launched because the ALJ engaged in what Ms. Miller contends were ex parte communications with a consultative examiner, thereby violating the due process rights of Ms. Miller and any other claimant examined by that physician for this particular ALJ. Aplt. Opening Br. at 41; *see also* Aplt. Reply Br. at 14.

that "it would be difficult for Ms. Miller to hold employment due to her OCD symptoms and depression." Admin. R. at 570. The ALJ specifically acknowledged Ms. Manos' letter, as well as treatment notes from *other* Creoks' counselors, *see, e.g.*, *id.* at 18-19. He also observed that mental evaluations indicated Ms. Miller's "alleged symptoms [were] more severe than the findings from the evaluations [on] file" and that "[o]bjective testing . . . indicat[ed] mild problems compared to claimant's alleg[ations]." *Id.* at 23. Ultimately, the ALJ did not give Ms. Manos' "letter . . . any weight," explaining that "[t]here d[id] not appear to be any records from this counselor and . . . she is not a psychologist or medical doctor." *Id.*

Ms. Miller contends the ALJ erroneously rejected Ms. Manos' opinion because "he could find no therapy notes from [her]," despite his "promise[] to subpoena the therapy records." Aplt. Opening Br. at 28. We disagree. At the close of her first administrative hearing the ALJ, having found "a lot of complaints in the record about depression and anxiety," ordered a consultative psychological examination. Admin. R. at 653. Because that exam revealed "essentially . . . no problems," *id.* at 666, the ALJ then requested from Creoks "*[a]ll* medical records from 2005 to present," *id.* at 547 (emphasis added). Creoks responded with more than twenty pages of records (none of which were from Ms. Manos). This material was entered into the record without objection, and no objection was lodged at the end of Ms. Miller's final administrative hearing. Thus, contrary to Ms. Miller's position, the ALJ did not fail to develop the record with respect to medical records from

Creoks. *Cf. Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996) (observing that the "ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing").

We also disagree with Ms. Miller's contention that the ALJ did not properly weigh Ms. Manos' opinion as an "other source" opinion or explain how he arrived at the weight he gave her opinion.[2] This argument fails to account for the

> distinction between what an adjudicator must consider and what the adjudicator must explain in the disability . . . decision[.] [T]he adjudicator generally should explain the weight given to the opinions from . . . "other sources," or otherwise ensure that the discussion of the evidence in the . . . decision allows a . . . subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06–03p at *6. Thus, we have held that it is not necessary for the ALJ to address each factor expressly or at length. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (observing that "not every factor for weighing opinion evidence will apply in every case") (alteration and internal quotation marks omitted). What matters is that the decision is "sufficiently specific to make clear to any subsequent reviewer[] the weight the adjudicator gave to the . . . opinion and the reasons for that weight." *Id.* (quotation omitted). The ALJ's decision meets this test. Moreover, the weight the ALJ accorded Ms. Manos' "other source" opinion was not based solely on her status as a counselor. The ALJ noted that there did "not appear to be any records from

---

2    Opinion evidence from "other sources" is evaluated using the factors outlined in sections 404.1527(d) and 416.927(d), as explained in further detail in Social Security Ruling (SSR) 06-03p, 2006 WL 2329939 (Aug. 9, 2006).

- 6 -

this counselor" other than her letter.  Admin. R. at 23.  And, as previously alluded to, we did not find any records from Ms. Manos, and Ms. Miller has not directed our attention to any.  *Cf.*, *e.g.*, *Frantz v. Astrue*, 509 F.3d 1229, 1302 (10th Cir. 2007) (observing that "it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion" (internal quotation marks omitted)).

## B.  Credibility Determination

The ALJ found Ms. Miller's "statements concerning the intensity, persistence and limiting effects of [her] symptoms . . . not credible to the extent they [were] inconsistent with [her RFC]."  Admin. R. at 22.  She challenges this determination, complaining that the ALJ used boilerplate language and "failed to state which of [her] statements he accepted as true and which he considered not credible." Aplt. Opening Br. at 30.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (citation, brackets, and internal quotation marks omitted).

- 7 -

Here, the ALJ began his credibility analysis by citing the applicable Social Security regulations and rulings governing the evaluation of symptoms. He recited portions of Ms. Miller's hearing testimony regarding her ailments and alleged functional limitations. For example, Ms. Miller's testimony that she "is unable to grip things due to her hands hurting so badly"; she "gets dizzy and her knees give out"; she "falls all the time"; she "had asthma real bad"; she had a petit mal seizure six months ago "and it had been a year since a grand mal seizure"; she experiences one or two migraines (that "last two days"), every fourteen days; her "mind races and she cannot sleep or concentrate"; she "cries every day due to pain or feeling worthless"; and she "has three bad days a week," during which time she "does not eat." Admin. R. at 21-22. The ALJ also identified subjective complaints Ms. Miller reported to physicians. He then cited numerous grounds, tied to the evidence, for his credibility finding.

Thus, despite the use of disfavored language, we are persuaded that the ALJ's credibility determination is closely and affirmatively linked to substantial evidence. The ALJ did more than "recite the general factors he considered." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); *cf. Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (observing that the "use of . . . [a] boilerplate paragraph is insufficient, in the absence of a more thorough analysis"). The ALJ supported his ultimate determination with specific evidence. *See Qualls*, 206 F.3d at 1372 ("[We do] not require a formalistic factor-by-factor recitation of the evidence. So long as

the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* [*v. Chater*, 68 F.3d 387 (10th Cir. 1995)] are satisfied.").

The ALJ pointed to Ms. Miller's reported daily activities of shopping, paying bills, going to the doctor, and participating in school functions with the children.  He cited July 2008 radiology reports of her hands and knees, observing that the "reports of the hands were normal," while the reports of her knees showed "mild degenerative changes of the medial compartment of the left knee and right knee."  Admin. R. at 22.  He noted that a consultative physical examiner found "all range[s] of motions were full, good grip strength, no joint deformities and no tenderness, redness, or swelling, and normal gait and heel to toe gait."  *Id.*  With respect to asthma, he recounted doctors' instructions that Ms. Miller should quit smoking and that she had been told her "smoking impacts her health every day."  *Id.*; *see Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) ("The failure to follow prescribed treatment is a legitimate consideration in evaluating the validity of an alleged impairment.").  He noted contradictions in Ms. Miller's testimony concerning her seizures, and he observed that headaches were documented in the record but she was "not taking any medication for headaches according to her medication list" and was "only taking an over-the-counter medication for the pain in her hands."  Admin. R. at 23.[3]

---

[3]     Ms. Miller's July 2009 medication list supports this statement, but the ALJ's statement is incomplete.  Three times during a nearly four-year time span, Ms. Miller

(continued)

- 9 -

Further, noting that he had assessed Ms. Miller's depression and personality disorder as severe at step two, the ALJ rejected State agency opinion evidence that her mental impairments were non-severe. But the ALJ also noted that the mental evaluations indicated that Ms. Miller's alleged symptoms were more severe than the findings in the evaluations on file and that objective testing had indicated mild problems compared to claimant's allegations.

Ms. Miller offers various explanations, qualifications, and excuses in an effort to downplay these considerations. But, as in *Hackett*, such argument "constitutes an invitation to this court to engage in an impermissible reweighing of the evidence and to substitute our judgment for that of the Commissioner, an invitation we must decline," 395 F.3d at 1173.

## C.    Step Four Determination

Ms. Miller also contends, as best we can discern, that the ALJ erroneously omitted all of the limitations of record in the RFC determination underlying his inquiries to the vocational expert (VE), and that as a result he "failed to ascertain that she had the required RFC to perform" her PRW as a grocery cashier. Aplt. Opening Br. at 20.

In *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996), we described the three-phases of a step-four analysis. At phase one, an ALJ determines the claimant's

saw a physician, complained exclusively of a headache, and was prescribed pain medication. This does not, however, undermine the ALJ's thorough credibility analysis, which is supported by substantial evidence.

- 10 -

physical and mental RFC. *Id.* at 1023. At phase two, the ALJ determines the physical and mental demands of the claimant's PRW. *Id.*[4] At phase three, the ALJ determines whether the claimant's RFC is consistent with the ability to meet the job demands of the claimant's PRW. *Winfrey*, 92 F.3d at 1023. Here, it is uncontested that the ALJ determined Ms. Miller's RFC. But, Ms. Miller contends that the ALJ should have included limitations in her RFC due to hand pain and limited dexterity, painful headaches, a moderate impairment in concentration and memory, brain damage, and a personality disorder. At phase two, the ALJ explicitly set forth the demands of Ms. Miller's PRW of grocery cashier, finding it a "semi-skilled light exertional job." Admin. R. at 23. Semi-skilled work, among other things, requires "some skills but does not require doing . . . more complex work duties." 20 C.F.R. § 404.1568(b); *id.* § 416.968(b). Thus, contrary to Ms. Miller's suggestion, the ALJ had sufficient information regarding the mental demands of Ms. Miller's PRW as a grocery cashier relevant to the mental limitations in her RFC—moderate to complex work in a habituated work setting. At phase three, the ALJ relied on the VE's testimony in comparing Ms. Miller's RFC with the physical and mental demands of the grocery cashier job, finding that she could perform the job as generally

---

[4]    To make such findings, an ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." Social Security Ruling (SSR) 82–62, 1982 WL 31386, at *3 (1982). The ALJ's phase-two task is case-dependent. *See id.* ("Detailed information about . . . mental demands [of past relevant work] . . . must be obtained *as appropriate*." (emphasis added)).

performed. Given the foregoing, we reject Ms. Miller's assertion that the ALJ did not perform the "required analysis" because "the conclusion at step 4 occur[red] only in the VE's head," leaving "nothing left to review." Aplt. Opening Br. at 23.

### 1. Hand pain and limited dexterity, headaches, impaired concentration and memory, and brain damage

We also reject Ms. Miller's argument that the ALJ erred in not including limitations in her RFC due to hand pain and limited dexterity because a *psychological* consultative examiner, John Hickman, Ph.D., noted that she reported pain in her hands while using a dynamometer and that her "fine motor dexterity was markedly slow with her right hand," Admin. R. at 521. Further, Ms. Miller's assertion—without citation to any authority—that a psychologist is qualified to render an opinion regarding a claimant's physical impairment, is without merit. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (observing that a psychologist "was not qualified to diagnose" "underlying physical conditions"); 20 C.F.R. §§ 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"), *id.* § 416.927(d)(5) (same).

The ALJ stated that he carefully considered all of the evidence, and he specifically discussed Dr. Hickman's report insofar as it assessed Ms. Miller's *mental* impairments. *See generally Wall*, 561 F.3d at 1070 (noting well-established principle of taking ALJ at his word when he indicates he considered all of the evidence). The ALJ acknowledged Ms. Miller's testimony that she could not work because she

- 12 -

cannot "grip things due to her hands hurting so badly." Admin. R. at 21. But he discounted this testimony to the extent it was inconsistent with her RFC. He likewise discounted her testimony regarding headaches and impaired concentration and memory. And, as previously discussed, the ALJ's credibility determination enjoys substantial evidentiary support. Moreover, the omission of limitations due to hand pain and limited dexterity, headaches, concentration and memory, and brain damage was not error because no limitations in this regard were borne out by the record evidence. *Decker*, 86 F.3d at 955.

### 2. Personality Disorder

Finally, Ms. Miller contends that the ALJ "failed to explain why he did not consider [her] personality disorder[] in his RFC." Aplt. Opening Br. at 25. Ms. Miller ignores, however, that even though a personality disorder was one of the severe impairments identified at step two, the ALJ found (before assessing her RFC) that she did not meet the "Paragraph B" criteria for Listing 12.08 (Personality Disorders) because she was not markedly impaired in *any functional areas* and had no episodes of mental decompensation of extended duration. Ms. Miller does not offer any record evidence to the contrary, outside of her own self-reports, which she incorrectly refers to as "findings." Aplt Opening Br. at 25. The record evidence does not support any mental functional limitations arising from a personality disorder (beyond those already assessed), and Ms. Miller has not identified any medical findings attributable to a personality disorder that would impose such limitations.

- 13 -

*Cf. Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988) (observing that the "mere fact that [the claimant] was diagnosed as suffering from major depression does not automatically mean that he is disabled").

Accordingly, we conclude that the ALJ's RFC determination underlying his inquires to the VE adequately reflected the "impairments and limitations that [were] borne out by the evidentiary record," and that Ms. Miller has not identified any reversible error in the ALJ's decision to deny benefits at step four of the sequential evaluation process. *Decker*, 86 F.3d at 955 (citation omitted); *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (stating that the ALJ's hypothetical questions "must include all (and only) those impairments borne out by the evidentiary record"). Because we affirm the ALJ's finding of nondisability at step four, we need not consider Ms. Miller's step five arguments. *See Murrell*, 43 F.3d at 1389 ("[D]ue to the way the sequential analysis is structured, a proper finding of . . . nondisability (at steps two, four, or five) is conclusive and, thus, cannot be overturned by consideration of a subsequent step.").

### III.  Conclusion

The judgment of the district court is AFFIRMED.

Entered for the Court

Wade Brorby
Senior Circuit Judge

- 14 -