FILED
United States Court of Appeals
Tenth Circuit

August 19, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JOE ELLA WELLS,

       Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security
Administration,[*]

       Defendant-Appellee.

No. 12-6234

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 5:11-CV-0631-M)**

Submitted on the briefs:[**]

Kyle J. Saunders, Saunders & Saunders, Ada, Oklahoma, for Plaintiff-Appellant.

Sanford C. Coats, United States Attorney, Michael McGaughran, Regional Chief
Counsel, Virginia Watson Keyes, Special Assistant United States Attorney, Office of

---

[*]     In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure,
Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant-appellee in
this action.

[**]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

the General Counsel, Region VI, Social Security Administration, Dallas, Texas, for Defendant-Appellee.

Before **LUCERO**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

**BALDOCK**, Circuit Judge.

In a social security disability or Supplemental Security Income (SSI) case, an administrative law judge (ALJ) must evaluate the effect of a claimant's mental impairments on her ability to work using a "special technique" prescribed by the Commissioner's regulations. 20 C.F.R. §§ 404.1520a(b)-(d), 416.920a(b)-(d). At step two of the Commissioner's five-step analysis,[1] this special technique requires the ALJ to determine whether the mental impairment is "severe" or "not severe." *Id.* §§ 404.1520a(d), 416.920a(d). But the regulations also instruct that even if the ALJ determines that a claimant's medically determinable mental impairments are "not severe," he must further consider and discuss them as part of his residual functional capacity (RFC) analysis at step four. *See id.* §§ 404.1545(a)(2), 416.945(a)(2). The

---

[1]     The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing process). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *See id.* at 751 n.2. If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains a sufficient RFC to perform work in the national economy, given her age, education, and work experience. *See id.* at 751.

question is, how much further discussion of a non-severe impairment is required at step four?

This issue, frequently encountered in social security disability appeals, has resulted in a number of recent unpublished dispositions in this court reaching divergent results.[2] Notwithstanding the divergence in these decisions, the Commissioner's regulations, together with the rulings interpreting those regulations,

[2]     *Compare Farrill v. Astrue*, 486 F. App'x 711, 712-13 (10th Cir. 2012) (reversing because the ALJ neglected to discuss "non-severe" but medically determinable mental impairments as part of his RFC determination); *McFerran v. Astrue*, 437 F. App'x 634, 638 (10th Cir. 2011) (same); *Mushero v. Astrue*, 384 F. App'x 693, 695-96 (10th Cir. 2010) (reversing because although ALJ found "no 'significant'" work-related limitations due to claimant's depression, which was equivalent to finding that depression was non-severe, even non-severe impairments must be considered as part of RFC); *Grotendorst v. Astrue*, 370 F. App'x 879, 883-84 (10th Cir. 2010) (reversing because although ALJ's finding that mental impairments were non-severe at step two was harmless error, ALJ failed to give further consideration to mental impairments in RFC assessment, despite medical evidence of such limitations); *Dorman v. Astrue*, 368 F. App'x 864, 865-66 (10th Cir. 2010) (reversing because although ALJ found claimant had only "mild mental impairments" and concluded claimant could perform his past relevant work, ALJ failed to properly evaluate the mental demands of that past relevant work), *with Miller v. Astrue*, 496 F. App'x 853, 859-60 (10th Cir. 2012) (affirming notwithstanding ALJ's failure to discuss severe mental impairment as part of his RFC determination, where "claimant was not markedly impaired in any functional areas" for purposes of Paragraph B criteria, and claimant failed to provide any additional record evidence of mental functional limitations resulting from personality disorder (emphasis omitted)); *Grede v. Astrue*, 443 F. App'x 323, 325-26 (10th Cir. 2011) (affirming where ALJ found mental impairment non-severe, made no further findings concerning a mental impairment at step four, but stated he had considered all of claimant's symptoms and the medical evidence); *Barrett v. Astrue*, 340 F. App'x 481, 485 (10th Cir. 2009) (finding no reversible error where ALJ concluded mental impairments were non-severe and therefore included no mental limitation in RFC, but also "indicated that he had . . . considered the entire record and all of [the] claimant's symptoms to the extent . . . they were reasonably consistent with the evidence, including the objective medical evidence").

provide us with the appropriate path to follow here.  These regulations inform us, first, that in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*.  *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).  Second, the Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis.  *See* Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *4 (July 2, 1996) (noting that criteria used at steps two and three of the analysis to evaluate mental impairments are "not an RFC assessment," and that "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].").  Finally, and most importantly, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."  *Id.* at *7.

Here, the ALJ found that Ms. Wells' alleged mental impairments were medically determinable but non-severe.  He then used language suggesting he had excluded them from consideration as part of his RFC assessment, based on his determination of non-severity.  The Commissioner urges us to "uphold the ALJ's determination that . . . [Ms.] Wells did not have a severe mental impairment" and that

- 4 -

he therefore had no obligation "to include additional work restrictions in his RFC finding." Aplee. Br. at 23. Under the regulations, however, a finding of non-severity alone would not support a decision to prepare an RFC assessment omitting any mental restriction.[3]

The ALJ did go on to discuss Ms. Wells' mental functioning, to some extent, in the credibility portion of his RFC analysis. His discussion, though far from systematic, may have been adequate to fulfill his duty at step four to determine her mental RFC. In this particular case, however, the specific conclusions he reached in this portion of his analysis were unsupported by substantial evidence. Accordingly, we must reverse the district court's affirmance of the ALJ's decision and remand to the district court with instructions to remand to the Commissioner for further proceedings at step four.

In addition to our reversal and remand on the mental impairment issue, we conclude that the ALJ should re-evaluate Ms. Wells' alleged physical limitations on reaching and handling. We find no reversible error in other aspects of the ALJ's decision. These include his rejection of a physician's assistant's report, his

---

[3] An ALJ could, of course, find at step two that a medically determinable impairment posed *no* restriction on the claimant's work activities. *See* 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4) (permitting ALJ to find that degree of limitation in each of the four relevant functional areas is "none"). Such a finding would obviate the need for further analysis at step four. That is not the case here, however; the ALJ did find "mild" restrictions in three of the relevant functional areas, requiring further analysis.

evaluation of her past relevant work (PRW), and his evaluation of the effect of her symptoms, including pain, on her ability to work.

## BACKGROUND

### 1. Prior History of this Case

This case has a complex procedural history. Ms. Wells filed her first application for disability and SSI benefits in 1994. The Commissioner denied benefits and she did not seek judicial review.

On April 7, 2000, Ms. Wells filed a second application for disability benefits. After her application was denied, she obtained a hearing before an ALJ. He determined that she was engaged in substantial gainful activity (SGA) during all time periods relevant to the application and issued an unfavorable step-one ruling in 2001. Ms. Wells requested review from the Appeals Council.

While her request for review was pending, Ms. Wells filed a third application for disability and SSI benefits with a protective filing date of October 8, 2002, alleging a disability onset date of December 1, 2001. An ALJ issued an unfavorable decision on this third application in December 2004. Ms. Wells requested review of the ALJ's decision from the Appeals Council.

On December 19, 2005, the Appeals Council granted her requests for review from both the second and third applications. It vacated both hearing decisions, consolidated the cases, and remanded them for further proceedings.

On August 24, 2006, an ALJ held a supplemental hearing on the consolidated cases. At the hearing, Ms. Wells amended her alleged onset date to April 25, 1997,

based on the res judicata effect of the denial of her first application. The ALJ issued an unfavorable decision on the consolidated cases. Ms. Wells sought review from the Appeals Council. On May 19, 2008, the Appeals Council again vacated the ALJ's decision and remanded for further proceedings.

## 2. Decision Currently on Review

In August 2009, Ms. Wells received a second supplemental hearing before yet another ALJ. At this hearing, Ms. Wells again amended her disability onset date, this time to October 31, 1999.

On November 16, 2009, the ALJ issued the decision that is now before us. At step one of the five-step sequential evaluation process, he determined that during calendar year 2005, Ms. Wells had engaged in SGA. She was therefore ineligible for benefits for calendar year 2005.[4] For the time period October 31, 1999, to December 31, 2004, however, and for the time period beginning December 31, 2005 through the date of his decision, the record was insufficient to show that Ms. Wells had engaged in SGA. The ALJ therefore found that she had satisfied her step-one burden as to those time periods, and he proceeded to step two of the process. For steps two through five, he divided his decision into two parts, each containing a separate analysis.

---

[4] Ms. Wells has not challenged this determination.

## A. October 31, 1999 to December 31, 2004

For the time period October 31, 1999, through December 31, 2004, the ALJ determined at step two that Ms. Wells suffered from the following, severe impairments: degenerative disc disease, status post carpal tunnel surgery times two of the right upper extremity, status post removal of kidney, status post arthroscopic surgery of the right knee, obesity, hypertension, hyperlipidemia, and diabetes mellitus. He decided that her alleged mental impairments, anxiety and affective disorder, caused her no more than mild restriction of activities of daily living, mild limitations in social functioning, mild limitations in concentration, persistence, or pace, and no episodes of decompensation. They were therefore not "severe" impairments. *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

At step three, the ALJ determined that Ms. Wells did not have a listed impairment. *See id.*, Part 404, Subpt. P, App. 1. At step four, he opined that she retained the RFC to perform the full range of light work. Specifically, he found that she could occasionally lift and/or carry twenty pounds, and frequently lift and/or carry ten pounds. She could stand and/or walk six hours in an eight-hour workday and could sit for six hours in an eight-hour workday.

The ALJ found that during this time period, Ms. Wells could return to her PRW as a chemical dependency assistant/aide (as actually performed), bookkeeper, clerk, customer complaint clerk, order clerk, and home health aide. Alternatively, at step five, there were a significant number of other jobs that she could perform in the

national or regional economy.  Applying the Medical-Vocational Guidelines, *id.*, Part 404, Subpt. P, App. 2, rules 202.21 and 202.14 (the grids), the ALJ concluded that Ms. Wells was not disabled within the meaning of the Social Security Act.

### B.  After December 31, 2005

For the period after December 31, 2005, the ALJ found that Ms. Wells had two additional severe impairments:  status post heart attack with stent placement in 2007 and a hospitalization in April 2009 for low blood sugar.  He again reviewed the evidence concerning her mental impairments and again determined that they were not "severe."  He again determined that she did not meet a listing at step three of the process.

For this latter period, rather than the full range of light work, the ALJ found at step four that Ms. Wells could perform sedentary work.  She could occasionally lift or carry no more than ten pounds.  She could stand and/or walk about four hours of an eight-hour workday and sit six hours of an eight-hour workday.  She could perform her PRW at the sedentary level as a bookkeeper, customer complaint clerk, order clerk, and home health aide coordinator.  The ALJ did not make an alternative step-five finding for this time period.

### ANALYSIS

Because the Appeals Council denied Ms. Wells' request for review, the ALJ's decision is the Commissioner's final decision.  "We review the Commissioner's decision to determine whether the factual findings are supported by substantial

evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

On appeal, Ms. Wells raises two issues: (1) whether the ALJ properly evaluated the medical evidence concerning her mental and physical impairments, and (2) whether the ALJ properly determined her RFC and reached a permissible conclusion that she could return to her PRW. We consider each issue in turn.

## 1. ALJ's Evaluation of the Medical Evidence

### A. Mental Impairments

#### 1. Findings at Steps Two and Four

The Commissioner follows a special technique to evaluate the severity of mental impairments and their effect on the claimant's ability to work. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). In applying the special technique, the ALJ must first decide whether the claimant has a medically determinable mental impairment. *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1). The ALJ determined that Ms. Wells had two medically determinable mental impairments: an anxiety disorder and an affective disorder.

The ALJ must next rate the degree of the functional limitation resulting from the claimant's medically determinable mental impairments in four broad functional areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or

pace; and episodes of decompensation." *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). To complete this step, the ALJ uses a five-point scale, rating the degree of limitation in the first three areas as either none, mild, moderate, marked, or extreme; and the limitation in the fourth area using a numerical scale of either none, one or two, three, or four or more. *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4). The ALJ's degree-of-limitation ratings then inform his conclusions at steps two and three of the five-step analysis. *Id.* §§ 404.1520a(d); 416.920a(d).

Here, for both time periods in question, the ALJ determined that Ms. Wells' mental impairments would cause her no more than "mild" limitations in each of the first three functional areas, and "no" limitation in the fourth area. Aplt. App., Vol. I at 30, 40 (internal quotation marks omitted). Under the regulations, this means that her mental impairments were "not severe." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).[5] Ms. Wells challenges the ALJ's finding of non-severity, contending it is unsupported by substantial evidence. She also challenges the ALJ's further conclusion at step four that her mental impairments would impose no limitation on her ability to work, and the ALJ's consequent failure to include any mental limitation in his RFC assessment or in his hypothetical questions to the vocational expert (VE).

---

[5]    Although the regulations do not expressly require the ALJ to determine whether a non-severe mental impairment "meets or is equivalent in severity to a listed mental disorder," *see* 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2), the ALJ also determined that Ms. Wells' non-severe impairments did not meet or equal a listing at step three of the analysis, *see* Aplt. App., Vol. I at 29, 39.

Although we cannot endorse all of Ms. Wells' challenges to the ALJ's evaluation of her mental impairments—we agree with the Commissioner that any harmful errors would have occurred at step four rather than at step two of the analysis[6]—we do conclude that the ALJ failed to properly evaluate her mental impairments.

First, a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five. In his RFC assessment, the ALJ must consider the combined effect of *all* medically determinable impairments, whether severe or not. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Here, after stating his conclusion that Ms. Wells' mental impairments were non-severe, the ALJ stated that "[t]hese findings do not result in further limitations in work-related functions in the [RFC] assessment below." Aplt. App., Vol. I at 30, 40. He then reiterated his conclusion that the mental impairments were non-severe. *See id.* The language used suggests that the ALJ may have relied on his step-two findings to conclude that Ms. Wells had no limitation based on her mental impairments. If so, this was inadequate under the regulations and the Commissioner's procedures.

---

[6]     *See Carpenter v. Astrue*, 537 F.3d 1264, 1265-66 (10th Cir. 2008) (holding that any error in consideration of impairments at step two was harmless, given that ALJ found step-two test satisfied by other severe impairments and continued with his analysis).

In assessing a claimant's RFC, "[t]he adjudicator must remember that the limitations identified in the 'paragraph B' . . . criteria [for severity] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4. "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form]." *Id.*

Although the PRT form merely provides a *summary* of these functions, the Ruling provides additional guidance concerning the focus of the ALJ's assessment of the claimant's mental RFC. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.* at *6. Moreover, the "RFC assessment must include a narrative discussion describing how the evidence *supports each conclusion*, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7 (emphasis added).

Notwithstanding his previous statement about step-two findings, the ALJ did—as previously mentioned—separately discuss Ms. Wells' mental impairments to

- 13 -

some degree, when assessing her credibility as part of his RFC determination. This discussion, though far from comprehensive, might have satisfied the ALJ's obligation at step four to provide a more detailed assessment of Ms. Wells' ability to complete various job functions as part of determining her RFC. But we need not determine whether the discussion was procedurally adequate, because the ALJ's conclusions on this point were not supported by substantial evidence. This can clearly be seen by analyzing the statements he made about Ms. Wells' mental impairments during the course of his RFC determination.

First, the ALJ relied on Ms. Wells' own prior alleged statement to a consultative examiner to gauge her ability to do activities of daily living: "The claimant admitted during the January of 1997 consultative psychological examination that she helped with household chores (including vacuuming and dishwashing), she continued to drive, she drove to Shreveport, LA. to gamble, and she enjoyed hobbies such as sewing and fishing." Aplt. App., Vol. I at 33. This statement, however, refers to an examination conducted nearly three years *before* Ms. Wells' currently alleged onset date of October 31, 1999. Ms. Wells testified at four different ALJ hearings subsequent to the 1997 statement. At none of them did she indicate she could do all of the activities she allegedly mentioned during the 1997 consultative examination. *See id.* at 93-94, 95, 97, 106-07, 109, 143, 151-52, 154-55, 187, 189-90, 220, 222, 224. Moreover, the January 1997 consultative examination the

ALJ cited does not appear to be part of the administrative record in this case presented for judicial review.

The ALJ next stated: "The claimant reported on May 23, 2000 that her activities of daily living included watching television, preparing meals, shopping, reading the newspaper, visiting friends and relatives, driving, and going to church." *Id.* at 33. The record cited is insufficient to provide substantial evidence for the ALJ's conclusion that Ms. Wells' mental impairments would have no significant effect on her RFC. *See id.*, Vol. III at 788-93 ("Disability Supplemental Interview Outline"). The statements reported on the form were much more nuanced than the ALJ's summary suggests. For example, Ms. Wells stated that she fixes meals only "when [I] feel like cooking," which is "once or twice a week." *Id.* at 789. She also stated that eating can make her "get real sick [to] the stomach." *Id.* She stated she watches television because she cannot sleep. *Id.* at 788. Although she does socialize, she stated she "like[s] to be alone most of the time." *Id.*

Finally, relative to Ms. Wells' alleged difficulties with persistence and pace and in dealing with the public, the ALJ noted "that the claimant was employed for at least a portion *of the period October 31, 1999 through December 31, 2004.*" *Id.*, Vol. I at 34 (emphasis added). But most of the examples he cited dated from the time

period *before* October 31, 1999, *see id.* at 34-35, not during the period he identified, and therefore provided no support for his statement.[7]

The ALJ did cite a few examples of jobs Ms. Wells held after October 31, 1999, to support his claim that she demonstrated an ability to maintain adequate persistence and pace and to deal with the public. First, she worked in customer service for Williams-Sonoma doing catalog sales in 1999 and 2000.[8] The ALJ listed the strength demands of this job, and also noted that it required "using technical knowledge or skills to write reports/complete forms." *Id.* at 35. But as Ms. Wells points out, this job was of short duration, over the Christmas season, lasting only a month or two. *Id.* at 134, 177. She did not work again until four years later, in June 2004, when she began work for PIA, a detox center. This job, however, was part-time, *see id.* at 103, and does not necessarily demonstrate Ms. Wells' ability to sustain the mental demands of full-time work.

The ALJ continued his analysis by stating that "[i]n October of 2005, the claimant returned to work at levels above substantial gainful activity." *Id.* at 35. This appears incorrect; the ALJ may have meant to say October 2004. In fact, the

---

[7]     As part of this analysis, the ALJ stated that "[b]eginning in 1995 until August of 2006, [Ms. Wells] worked full time in payroll and accounts receivable at a nursing home." Aplt. App., Vol. I at 34. This appears to be a typographical error. According to her testimony, she actually worked at that job from November 1995 through August 1996. *See id.* at 137.

[8]     The ALJ misstated the name of this employer as "Sonoma-Williams." Aplt. App., Vol. I at 35.

evidence shows that Ms. Wells was last gainfully employed in September 2005. *Id.*, Vol. II at 389, 453. She was laid off in October 2005 from Recovery Tech, another detox center, where she had been working forty hours per week since about the beginning of 2005. *Id.*, Vol. I at 104.[9]

In sum, although there is some appeal to the ALJ's conclusion that Ms. Wells' work experience in 2004 and 2005 is "evidence [that she] retains . . . the ability to perform semi-skilled to skilled work, the ability to interact socially, and the ability to respond to usual work changes," *id.* at 35, the ALJ's mistaken chronology and use of pre-onset date work cast doubt on the validity of his analysis, and we cannot credit his conclusion with substantial evidence.

To sum up, to the extent the ALJ relied on his finding of non-severity as a substitute for adequate RFC analysis, the Commissioner's regulations demand a more thorough analysis. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). To the extent the ALJ intended his further statements about credibility to constitute a step-four mental RFC analysis, the conclusions he reached from these statements are not supported by substantial evidence. We must therefore remand for further proceedings concerning the effect of Ms. Wells' medically determinable mental impairments on her RFC, and for further analysis at steps four and five, including any further hearing the ALJ deems necessary, in his discretion.

---

[9]     Elsewhere in his decision, the ALJ correctly stated that Ms. Wells was laid off in 2005. *See* Aplt. App., Vol. I at 42.

## 2. Evaluation of Medical Opinions

Ms. Wells also complains about the ALJ's treatment of the medical opinions concerning her mental impairments. Because the issue involving this evidence may recur on remand in connection with the ALJ's need to adequately explain his RFC finding, we will briefly address this issue. The record includes three medical opinions concerning Ms. Wells' mental impairments, two of which assigned her "moderate" and even "marked" limitations in certain areas.[10] The ALJ rejected all three of them on the issue of severity because he concluded that they were inconsistent with the other evidence in the file showing that Ms. Wells' mental impairments had only a "mild" effect on her ability to work.

Ms. Wells contends that substantial evidence is necessarily lacking because, having rejected *all* of the medical opinions concerning the severity of her mental impairments, the ALJ must have improperly substituted his own judgment concerning their severity. We have already determined that any step-two error was harmless. But to the extent this issue might affect the ALJ's proper determination of her RFC on remand, we note that exact correspondence between a medical opinion and the mental RFC is not required. *See Chapo v. Astrue,* 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence

---

[10]     In his decision, the ALJ also discussed a fourth opinion, prepared by Dr. Richard Swink, Ph.D., in January 1997. Aplt. App., Vol. I at 28-29. This opinion was prepared prior to the alleged onset date and is not part of the administrative record on appeal. Accordingly, we will not discuss it further.

- 18 -

between an RFC finding and a specific medical opinion on the functional capacity in question" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record" (alteration and internal quotation marks omitted)).

In reaching his RFC determination, an ALJ is permitted, and indeed required, to rely on *all* of the record evidence, including but not limited to medical opinions in the file. *See* SSR 96-8p, 1996 WL 374184, at *5. Inconsistency with the record as a whole, the basis on which the ALJ relied here, is in general a legitimate basis on which to discount or reject a medical opinion. *Cf.* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007).

That said, in cases like this one, where the medical opinions appear to conflict with the ALJ's decision regarding the extent of a claimant's mental impairment to the point of posing a "serious[] challenge [to] the ALJ's [RFC] assessment," *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1050 (10th Cir. 1993), it may be inappropriate for the ALJ to reach an RFC determination without expert medical assistance, *see id.*; *Chapo*, 682 F.3d at 1289 & n.1; *cf.* 42 U.S.C. § 421(h) (stating Commissioner must "ma[k]e every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment."). On remand, the ALJ should therefore carefully reconsider whether to adopt the restrictions on Ms. Wells'

- 19 -

mental RFC detailed in the medical opinions contained in the file, or whether further medical evidence is needed on this issue.

### B. Dr. Saidi's Opinion

We turn from consideration of Ms. Wells' mental impairments to evidence concerning her physical impairments. She argues that the ALJ failed to properly consider the opinion of John A. Saidi, M.D., who performed a consultative examination in August 2008. As a result of the examination, Dr. Saidi completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)," in which he limited Ms. Wells to sitting only five to ten minutes at a time; standing and walking five minutes at a time; sitting for a total of one hour in an eight-hour day; and standing or walking only one or two hours in an eight-hour day. Aplt. App., Vol. II at 663, 664. He further opined that she would need to lie down for four hours of an eight-hour workday, would be limited by postural and environmental limitations, and could only occasionally reach, handle, and push/pull with either hand. *See id.* at 664-67.

The ALJ gave Dr. Saidi's findings little weight, based on inconsistencies between the boxes Dr. Saidi checked on the form compared to his written narrative, and based on the lack of objective medical findings. He also noted that Dr. Saidi's opinion conflicted with the opinion of Dr. Don Clark, a medical consultant who testified at the second supplemental hearing. The ALJ stated that he "assigned more

weight to the opinion of . . . Dr. Clark, who had the opportunity to review the entire record at the hearing." *Id.*, Vol. I at 43.

Ms. Wells complains that the ALJ's stated reasons are unsupported by substantial evidence. In particular, she argues that Dr. Clark's opinions did not in fact significantly differ from Dr. Saidi's. We disagree.

Admittedly, Dr. Clark's narrative at the hearing was not a model of clarity. He began by saying that he "tend[ed] to agree pretty much with what [Dr. Saidi's] examination said." *Id.* at 77. But immediately after saying this, he went on to outline some significant points of disagreement he had with Dr. Saidi's opinions. First, he found no explanation for the postural limitations Dr. Saidi assigned. Nor did he think Dr. Saidi's limitation on Ms. Wells' sitting and standing to only five minutes was supported by his examination or by her history. In fact, Dr. Clark stated that "the physical examination is not substantiating difficulty walking or standing." *Id.* at 80. By the end of his initial discussion of Dr. Saidi's report, Dr. Clark had mostly expressed his agreement with those portions of the report that outlined Ms. Wells' affirmative capabilities. *See id.* at 78 (Dr. Clark's testimony noting that Dr. Saidi "felt she could do all those things"). Dr. Clark then concluded his initial discussion of the report by noting that "I don't think she could do anything heavier than light work." *Id.*

The language we have cited in Dr. Clark's analysis generally supports the ALJ's rejection of Dr. Saidi's opinion. But Ms. Wells zeroes in on two particular

areas of agreement between Dr. Clark and Dr. Saidi that she claims the ALJ failed to explain. She contends the ALJ should have detailed "why he did not accept Dr. Clark's agreement with Dr. Saidi's limits on [Ms.] Wells['] ability to reach and handle, and the inability to work an eight-hour workday." Aplt. Br. at 23.

Ms. Wells fails to show that Dr. Clark adopted Dr. Saidi's conclusion that she could not work an eight-hour day; such a conclusion would have been inconsistent with Dr. Clark's general observations concerning her ability to work. The limits on reaching and handling present a different problem. The VE testified that if accepted, they would preclude Ms. Wells' performance of her sedentary PRW. *See* Aplt. App., Vol. I at 119. While Dr. Clark did not specifically adopt these limitations, nor did he reject them, even though he was clearly familiar with Dr. Saidi's report and expressly detailed his reservations concerning other portions of it.

Of course, in addition to relying on Dr. Clark's testimony, the ALJ rejected Dr. Saidi's opinions because they lacked objective findings and were inconsistent with the supporting narrative. Indeed, Dr. Saidi expressly based some of the restrictions in his medical source statement on a simple determination that there were "no . . . other significant findings." *Id.*, Vol. II at 665-66. But neither of these objections seems to apply to the limitations Dr. Saidi imposed on reaching and handling. Dr. Saidi stated he imposed the limitations because Ms. Wells' "range of motion in shoulder and neck are within normal limit[s] but associated with stiffness,"

- 22 -

a conclusion neither unsupported by his objective medical testing nor inconsistent with his narrative. *Id.* at 665.[11]

Given the VE's statement about the effect of these limitations on Ms. Wells' ability to perform her PRW, and given our remand on other grounds, the ALJ should re-evaluate on remand Ms. Wells' alleged limitations on reaching and handling. He should provide proper reasons if he again chooses to reject them, or else properly factor them into his analysis of her RFC.

### C. Physician Assistant Boatner's Assessment

McKinley Boatner, a physician's assistant, provided a medical source statement that contained severe limitations on Ms. Wells' ability to lift, stand, walk, sit, and perform such activities as climbing, balancing, stooping, kneeling or crouching. Aplt. App., Vol. II at 537-38. In considering this statement, the ALJ noted that Mr. Boatner was not an "acceptable medical source[]" within the meaning of the regulations. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (defining acceptable medical sources). This meant that Mr. Boatner's statement was not entitled to consideration as a "medical opinion" under the regulations, but could be considered to show the severity of Ms. Wells' impairments and how they affected her ability to work. *See id.* §§ 404.1513(d), 416.913(d).

---

[11] The Commissioner discounts this reasoning because Dr. Saidi's range-of-motion testing revealed stiffness but no pain. Aplee. Br. at 30. But there is no inconsistency here: Dr. Saidi stated it was stiffness, not pain, that would preclude Ms. Wells from more than occasional reaching, handling, or pushing/pulling.

The ALJ assigned Mr. Boatner's statement less weight than the opinions of the non-examining state agency doctors and the medical expert at the hearing. He found that Mr. Boatner's conclusions were inconsistent with the medical expert's testimony and with other evidence in the file. Notwithstanding Ms. Wells' argument to the contrary, the ALJ's explanation of the weight assigned to Mr. Boatner's statement is sufficient for us to follow his reasoning. *See Bowman v. Astrue*, 511 F.3d 1270, 1275 (10th Cir. 2008) (requiring that ALJ's discussion of "other source" evidence be sufficiently clear that court can "follow the adjudicator's reasoning" (internal quotation marks omitted)). We discern no reversible error in the ALJ's discussion of this report, and his conclusions concerning the report were supported by substantial evidence.

## 2. ALJ's Conclusions Concerning Past Relevant Work

Ms. Wells makes additional arguments concerning the ALJ's decision at step four. "Step four of the sequential analysis . . . is comprised of three phases." *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). "In the first phase, the ALJ must evaluate a claimant's physical and mental [RFC], and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work." *Id.* (citation omitted). "In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Id.* "At each of these phases, the ALJ must make specific findings." *Id.*

Ms. Wells first disagrees with the ALJ concerning which jobs constituted her PRW. The ALJ found that she was capable of performing her PRW as a bookkeeper, a customer complaint clerk, an order clerk, and a home health aide coordinator. Ms. Wells argues that three of these four jobs—customer complaint clerk, order clerk, and home health coordinator—did not constitute PRW because she did the jobs on a part-time basis or only for a short time. She also argues that she performed them after October 31, 1999, and the Appeals Council previously determined that her work activity after that date did not constitute SGA.

The Commissioner does not contest her representation that these three jobs did not constitute PRW. But even if she could only perform the job of bookkeeper, that job is sufficient to support the ALJ's step-four determination concerning her PRW. The Commissioner need not establish that a prior job exists in significant numbers in the national economy to find that job constitutes PRW. *See Barnhart v. Thomas*, 540 U.S. 20, 25, 29-30 (2003).

Second, Ms. Wells argues that the ALJ erred by failing to make the required phase-two findings regarding the physical and mental demands of her PRW. To make the findings required by phase two of step four, an ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." SSR 82-62, 1982 WL 31386, at *3 (1982). Such information regarding work demands may be obtained from the claimant herself, her employer, or another informed source. *See id.* Ms. Wells contends that the ALJ

"failed to obtain testimony regarding the specific duties of Wells' PRW from either [Ms.] Wells or the VE." Aplt. Br. at 31. We disagree.

The ALJ's phase-two task is case-dependent. *See* SSR 82-62, 1982 WL 31386, at *3 ("Detailed information about . . . mental demands [of past relevant work] . . . must be obtained *as appropriate*." (emphasis added)). Here, the only medically established limitations at issue in our *Winfrey* analysis are the ALJ's findings that Ms. Wells could only perform the full range of light work between October 31, 1999, and December 31, 2004, and only a full range of sedentary work after December 31, 2005. Thus, the ALJ needed only to obtain enough information regarding these limitations to determine whether Ms. Wells could perform her PRW as a bookkeeper despite them. *Winfrey*, 92 F.3d at 1025. This, he did.

The ALJ questioned the VE concerning the bookkeeper job, and was told that it was "a sedentary skilled occupation" at level six. Aplt. App., Vol. I at 112. Thus, the ALJ had sufficient information regarding the demands of Ms. Wells' bookkeeping job relevant to his RFC assessment, which included the full range of either light or sedentary work and featured no other specific mental or postural limitations. Furthermore, the ALJ made a sufficient finding concerning this issue when he stated that "[t]he claimant's past work of bookkeeper . . . [was] sedentary in exertional level." *Id.* at 44.[12] In the event that this RFC assessment changes as a

---

[12] The ALJ imposed further restrictions on the bookkeeping job beyond those inherent in sedentary work, stating that it "require[d] lifting, carrying, pushing, and

(continued)

- 26 -

result of the remand we have ordered, however, we note that the ALJ may be required to obtain additional information concerning the physical or mental demands of Ms. Wells' PRW in order to properly complete the *Winfrey* analysis.

Ms. Wells also complains that the ALJ failed to determine whether she could perform the requisite physical and mental activities associated with her PRW on a full-time, sustained basis.[13] The issue is whether the ALJ improperly failed to "discuss [Ms. Wells'] ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)." SSR 96-8p, 1996 WL 374184, at *7. We conclude (subject to additional development of the issues on remand that we have ordered) that he did provide an adequate discussion. The ALJ did not simply make general findings that Ms. Wells could perform the full range of light work between October 31, 1999, and December 31, 2004, and only a full range of sedentary work after

pulling 10 pounds occasionally; and required mostly sitting, but may involve standing or walking for brief periods of time." Aplt. App., Vol. I at 44. We cannot discern the basis in the record for these findings. But any error or inconsistency is harmless, because according to the ALJ's RFC, such restrictions would pose no problem for Ms. Wells, who can do *the full range* of either light or sedentary work.

[13] Confusingly, she then argues that the ALJ *did* make such findings, but that they were not supported by substantial evidence. *See* Aplt. Br. at 32. Her argument about substantial evidence, however, is inadequate for judicial review; she merely states in a single sentence that "[t]he record contains evidence from Dr. Swink, Dr. Saidi, Dr. Clark, and McKinley Boatner that clearly shows [Ms.] Wells cannot perform her PRW or SGA on a sustained basis." *Id.* at 33. Accordingly, we will confine our discussion to her issue concerning adequate findings.

December 31, 2005. He also made subsidiary findings, pertaining to the former period, that she could "occasionally lift and/or carry 20 pounds," could "frequently lift and/or carry 10 pounds," could "stand and/or walk 6 hours in an 8 hour workday (with normal breaks)," and could "sit for 6 hours in an 8 hour workday (with normal breaks)." Aplt. App., Vol. I at 31. With regard to the latter period, he found that she could "occasionally lift and/or carry no more than 10 pounds," that she could "stand and/or walk (with normal breaks) about 4 hours of an 8-hour workday and sit (with normal breaks) 6 hours of an 8-hour workday." *Id.* at 41. Moreover, his findings concerning these exertional abilities were supported by a discussion of such factors as the "medical history," "medical signs and laboratory findings," "effects of treatment," "[r]eports of daily activities," "[l]ay evidence," "[m]edical source statements," "[e]ffects of symptoms," and "[e]vidence from attempts to work." SSR 96-8p, 1996 WL 374184, at *5. Ms. Wells fails to show that this discussion was inadequate.

Finally, Ms. Wells contends that the ALJ failed to discuss the effect of her symptoms, including pain, on her ability to work. Additional development and/or discussion is needed on the issue of her mental impairments, as discussed herein. But otherwise, in his decision, the ALJ provided the required narrative explanation concerning why he did not find her subjective complaints to be fully credible. *See* Aplt. App., Vol. I at 31-36, 41-43. We therefore reject this argument.

- 28 -

**CONCLUSION**

The judgment of the district court is reversed and remanded with instructions to remand to the Commissioner for further proceedings consistent with this opinion.