**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

ILLA WAHPEKECHE,

      Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security
Administration,

      Defendant - Appellee.

No. 15-6060
(D.C. No. 5:14-CV-00083-L)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **GORSUCH**, **MATHESON**, and **MORITZ**, Circuit Judges.
_____

    Illa Wahpekeche appeals from a district court order affirming the

Commissioner's decision denying her application for Social Security disability

benefits.  Ms. Wahpekeche applied for these benefits in 2012, alleging disability due

to back problems.  The agency denied her application initially and on

reconsideration.  Ms. Wahpekeche then sought review by an administrative law judge

(ALJ).

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The ALJ held a hearing at which Ms. Wahpekeche testified. In a written decision, the ALJ found that she was severely impaired by degenerative disc and joint disease, obesity, and asthma, but that these impairments did not meet or medically equal a listed impairment. She further determined that given her impairments, Ms. Wahpekeche retained the residual functional capacity (RFC)

> to perform light work . . . except [she] could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. She could stand/walk 2 hours out of an 8-hour workday, and sit 6 hours out of an 8-hour workday. She could stand/walk a maximum of 1 hour at a time, sit a maximum of 1 hour at a time, and would need to change positions at [her] workstation and stand without breaks. She could not climb ladders, ropes, or scaffolds, or crawl. She occasionally could climb stairs, balance, stoop, kneel, or crouch, and frequently reach. She must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, unprotected heights, and dangerous machinery.

Aplt. App., Vol. I at 34.

With this RFC, the ALJ found that Ms. Wahpekeche could return to her past relevant work as a PBX operator, and was therefore not disabled. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). We consider only those issues adequately preserved in the district court, *Wall v.*

*Astrue*, 561 F.3d 1048, 1066-67 (10th Cir. 2009), and adequately briefed for our review, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).

Ms. Wahpekeche first challenges the ALJ's credibility analysis. She argues that the ALJ failed to follow the appropriate procedure in analyzing her credibility. As a result, she claims, the ALJ's conclusions concerning the disabling effects of her symptoms, including her complaints of disabling pain, are unsupported by substantial evidence.

We give particular deference to an ALJ's credibility findings. *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001). "Not only does an ALJ see far more social security cases than do appellate judges, he or she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion." *Id.* That said, an ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

When evaluating pain or other allegedly disabling symptoms, an ALJ must "consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a loose nexus between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Branum v. Barnhart*, 385 F.3d 1268, 1273 (10th Cir. 2004)

3

(internal quotation marks omitted). The evidence the ALJ must consider includes the claimant's attempts to find relief, regular use of crutches or a cane, regular contacts with a doctor, daily activities, and the dosage, effectiveness, and side effects of any medication. *Keyes-Zachary*, 695 F.3d at 1167; *see also* SSR 96–7p, 1996 WL 374186, at *3 (listing such factors as the claimant's daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; and factors that precipitate and aggravate the symptoms).

The ALJ may not simply recite these factors without linking them to the evidence. *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004). But she is also not required to perform "a formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). In evaluating the ALJ's analysis, we do not require technical perfection, but are guided by common sense. *Keyes-Zachary*, 695 F.3d at 1167.

Ms. Wahpekeche complains that the ALJ failed to link any of the factors to specific evidence. We disagree. In his report and recommendation, the magistrate judge carefully parsed the ALJ's decision and discussed in detail the ALJ's specific reasons for her adverse credibility finding. *See* Aplt. App., Vol. II at 502-05. We need not repeat that discussion here. As the magistrate judge's analysis details, the ALJ tied the evidence to specific factors she was required to consider, such as the frequency and effectiveness of medical treatment, inconsistencies between Ms. Wahpekeche's allegations and the medical records, and reports of her daily activities. The ALJ's conclusion was supported by substantial evidence.

4

In light of this, there is also no merit to Ms. Wahpekeche's claim that the ALJ simply relied on opaque boilerplate to reach a conclusion concerning her credibility. Although the ALJ did cite disfavored boilerplate language, *see id.*, Vol. I at 35-36, "use of such boilerplate is problematic only when it appears in the absence of a more thorough analysis," *Keyes-Zachary*, 695 F.3d at 1170 (internal quotation marks omitted). Here, the ALJ's decision referred to specific evidence that supported her conclusions.

Finally, Ms. Wahpekeche contends that one of the ALJ's observations was false, and therefore unsupported by substantial evidence: that "she was possibly drug seeking requesting Lortab for back pain." Aplt. App., Vol. I at 36. Medical records show Ms. Wahpekeche presented at the Chickasaw Nation Medical Center on July 7, 2013, with back pain. *Id.*, Vol. II at 467. After verifying that she had been prescribed 90 Lortab pills only a few days earlier, the treating medical professional prescribed Ibuprofen. *Id.* at 468-69. The clinic's record does not explicitly state that Ms. Wahpekeche requested Lortab during her July 7 appointment. But even assuming the ALJ drew an incorrect inference from this record, reversal is not required. Ms. Wahpekeche's purported request for Lortab was merely one of several factors the ALJ considered in assessing credibility, and the ALJ qualified her passing reference to "drug seeking" with the word "possibly."

Ms. Wahpekeche next complains that the ALJ's determination that she can return to her past relevant work is flawed because the ALJ failed to conduct a proper

5

analysis at step four of the sequential process.[1]  But as the Commissioner notes, she

fails to show that she presented an argument concerning this issue to the district

court.  *See* Aplt. App., Vol. II at 474-92 (Ms. Wahpekeche's Brief in Chief); *id.* at

508-14 (Objections to Magistrate Judge's Report and Recommendation).

Accordingly, we decline to consider the issue.  *See Wall*, 561 F.3d at 1066-67.

Finally, Ms. Wahpekeche argues that the ALJ's RFC assessment is flawed

because it fails to specify the frequency of her need to alternate sitting and standing.

She cites language from a Social Security Ruling dealing with the implications of an

RFC assessment for less than a full range of sedentary work, requiring that the RFC

assessment "be specific as to the frequency of the individual's need to alternate

sitting and standing."  SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).  To the

extent that language applies to Ms. Wahpekeche's RFC—which is for less than a full

range of *light* work—we agree with the Commissioner that the ALJ adequately

specified the frequency of her need to alternate sitting and standing.

In her decision, the ALJ stated that Ms. Wahpekeche could sit, stand, and walk

for up to one hour at a time, but would also need to change positions at her

workstation and stand without breaks.  The hearing testimony amplifies the meaning

of this language, particularly the reference to standing "without breaks."  Dr. Ralston,

a medical expert, testified at the hearing that "it would be best to have

---

[1] "The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled."  *Wells v. Colvin*, 727 F.3d 1061, 1064 n.1 (10th Cir. 2013).  "The claimant bears the burden of establishing a prima facie case of disability at steps one through four."  *Id.*

[Ms. Wahpekeche] at least be given a break every hour to change position briefly."

Aplt. App., Vol. I at 56. The ALJ adopted Dr. Ralston's brief hourly change in position. In her hypothetical question to the VE, which essentially matched the RFC assessment in her decision, the ALJ explained that "if the person has been standing for an hour then [they] will sit down but they can do it at the work station, *not having to take a full break from that*." *Id.* at 67 (emphasis added). With such an hourly change in position, the VE testified that Ms. Wahpekeche could return to her job as a PBX operator. *Id.* at 68.[2] In sum, the ALJ's specification of maximum sitting, standing, and walking times, together with her adoption of brief hourly breaks, provided sufficient information to support the RFC assessment concerning Ms. Wahpekeche's need to alternate sitting and standing.

Ms. Wahpekeche also attacks the math behind these figures. She argues that

> if this Court divides the standing time of two (2) total hours out over the eight (8) hours of work it will find that standing can only occur up to a maximum of twenty-five (25) minutes at a time throughout the workday and then a total of 8.8 times per day, so it is much less than the one (1) hour total increment listed by the ALJ. The ALJ said she would need to stand every hour.

Aplt. Opening Br. at 23. The problem with this argument is that the ALJ did not say that Ms. Wahpekeche *had* to stand for an hour *at a time* (which would only allow her

---

[2] Ms. Wahpekeche's attorney asked the VE whether she could do the job if permitted to change position "[a]s much as she wants, whenever she wants, and under her control." Aplt. App., Vol. 1 at 73. The VE replied that this would be a problem "[i]f it's happening every five minutes *and you have difficulty performing the job tasks while you're doing that*." *Id.* (emphasis added). But he stated that the hourly breaks specified in the ALJ's RFC assessment likely would not affect Ms. Wahpekeche's ability to do the job. *Id.*

7

to stand twice a day), but that an hour was the *maximum* amount of time she could stand at one time. And as we have already explained, based on the hearing testimony, the ALJ's reference to standing "without breaks" does not refer to *continuous standing* in hourly increments, but to *continuous working* in spite of position changes. Nor does the RFC assessment require that the time Ms. Wahpekeche spends standing each day be divided into equal increments. In sum, we see no mathematical problem with the ALJ's analysis.

Finally, Ms. Wahpekeche contends that there is a conflict between the VE's testimony and the Dictionary of Occupational Titles (DOT), because the DOT's description of the PBX operator job does not expressly refer to a sit/stand option. She argues that the VE should have explained how he resolved this "conflict." *See* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) (requiring ALJ to resolve conflicts between DOT descriptions and VE testimony before relying on VE evidence). But she fails to demonstrate how any conflict exists between the VE's testimony and the DOT based simply on the DOT's silence concerning sit/stand options. Accordingly, the ALJ had no duty to resolve the alleged "conflict" before accepting the VE's testimony.[3]

---

[3] Ms. Wahpekeche also argues that the ALJ should have asked the VE to supply a "foundation for her belief that these jobs [sic] afford a sit-stand option." Aplt. Opening Br. at 28. To the extent this is intended as an argument separate from the "conflict with the DOT" argument, the argument is insufficiently developed for our review, and we decline to consider it.

8

The district court's order affirming the Commissioner's decision is affirmed.

Entered for the Court


Neil M. Gorsuch
Circuit Judge