**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

PAMELA RAY,

     Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

     Defendant - Appellee.

No. 15-2149
(D.C. No. 2:14-CV-00773-WPL)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.
_____

Pamela Ray applied for Social Security disability insurance benefits and

supplemental security income claiming that she could not work due to fatigue,

depression, carpal tunnel syndrome, arthritis, and asthma.  An administrative law

judge (ALJ) concluded that Ms. Ray's residual functional capacity (RFC) permitted

her to perform a number of jobs that exist in significant numbers in the national

economy, defeating her disability claim.  At step two of the applicable five-step

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

sequential evaluation, the ALJ determined that Ms. Ray's sleep apnea and mood disorder were not "severe impairments" within the meaning of the Social Security Act and its corresponding regulations. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the five-step process). The ALJ also found that Ms. Ray's fatigue did not constitute a medically determinable impairment. The ALJ ultimately assessed Ms. Ray with an RFC to perform light work with the following limitations: she can perform frequent but not constant handling; she must avoid concentrated exposure to environmental irritants and poorly ventilated areas; and she is limited to simple, routine, repetitive tasks and can maintain attention, concentration, persistence, and pace for two hours at a time.

After the ALJ denied her claim, the Appeals Council denied review and the district court affirmed. The district court concluded in relevant part that "no physician found medical evidence to support a diagnosis of fatigue." Aplt. App. Vol. 1 at DNM 71. The district court also observed that the ALJ "considered the limitations and restrictions imposed by Ray's sleep apnea and mood disorder." Aplt. App. Vol. 1 at DNM 72. On appeal, Ms. Ray challenges the district court's determinations regarding the ALJ's determinations at steps two and four. Our review is to determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

2

Ms. Ray first argues that the ALJ erred in concluding at step two that her fatigue was not a medically determinable impairment. She also contends that her mood disorder and sleep apnea should have been considered by the ALJ as non-severe impairments at step four. Unlike an error in determining an impairment's severity at step two, which is not reversible if the ALJ proceeds further to evaluate other impairments, *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016), a failure to find an impairment medically determinable is essentially a step-four error because the ALJ is only required to consider medically determinable impairments in the RFC at step four, whether severe or not, *see Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013). But even then, such error would be obviated if the ALJ considered the non-medically determinable impairment in assessing the RFC. Thus, Ms. Ray's fatigue argument lives or dies on the same field as her sleep-apnea and mood-disorder arguments — whether the ALJ considered or should have considered these impairments in crafting the RFC.

An ALJ must consider the limiting effects of non-severe impairments in determining the claimant's RFC. 20 C.F.R. §§ 404.1545(e), 416.945(e). Though Ms. Ray repeatedly insists that the ALJ did not consider her fatigue, sleep apnea, or mood disorder in determining her RFC, the ALJ expressly addressed them:

> In sum, although the claimant testified her fatigue is her most debilitating problem, there is a scarcity of objective medical findings to support her complaints. The record shows that the claimant has only mild sleep apnea. Moreover, the consultative examination report by Dr. Widmer indicated "no objective evidence for functional limitation with regards to" the claimant's fatigue complaints. . . . In addition, the claimant's daily activities are not consistent with her allegations of

3

> fatigue. The claimant stated she is able to get up about every hour and a half in the winter and cut, split, and carry in firewood as well as provide for the needs of animals, including dogs, cats, chickens, a goat, and horses. She also stated that she reads a lot and that her painting and sculpting are limited by her finances and not her medical condition. . . . Finally, the evidence discussed above supports a finding that Ms. Ray's "non-severe" mood disorder limits her to simple, routine, repetitive tasks with the ability to maintain attention and concentration for two hours at a time.

Aplt. App. Vol. 1 at 44–45 (citations omitted). The evidence referenced by the ALJ with regard to Ms. Ray's mood disorder was discussed at step two, where the ALJ considered her activities of daily living as herein described, as well as her "mild" limitations in social functioning and concentration, persistence, or pace. Aplt. App. Vol. 1 at 38–39.

While Ms. Ray is correct that fatigue can be difficult to diagnose, even generously considering her "subjective symptoms [to] determin[e] whether she had chronic fatigue," Opening Br. at 8, her complaints are undermined by her activities of daily living, *see* Aplt. App. Vol. 3 at 464 ("Despite her symptoms, she continues to maintain and care for multiple animals, which involves lots of physical activity."), and other medical evidence in the record. Among other things, multiple physicians found no abnormalities to explain Ms. Ray's fatigue, *see* Aplt. App. Vol. 3 at 464, 495, 505, 530, 551, 630, and lab tests yielded "completely unremarkable" results, *see* Aplt. App. Vol. 2 at 360. The record contains support for both the notion that Ms. Ray has a serious fatigue condition and the notion that her fatigue is not a medically determinable impairment, and the "ALJ was entitled to resolve such evidentiary conflicts." *See Allman*, 813 F.3d at 1333.

4

In the end, Ms. Ray does not challenge the sufficiency of the ALJ's RFC determination despite reciting medical evidence that she says contradicts the ALJ's findings. Absent an argument that the RFC is not based upon substantial evidence, we are left only with Ms. Ray's proposition that the ALJ erred in omitting her non-severe impairments from the RFC. Having discovered that, in assessing the RFC, the ALJ addressed and considered these impairments as well as Ms. Ray's fatigue, it is clear that the ALJ complied with the applicable regulations. Ms. Ray has therefore identified no basis for us to reverse the ALJ's decision. We affirm.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge