FILED
United States Court of Appeals
Tenth Circuit

November 21, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ROBERT A. ALARID,

Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,

Defendant-Appellee.

No. 14-1024
(D.C. No. 1:12-CV-03308-MSK)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **BALDOCK**, and **BACHARACH**, Circuit Judges.

Robert A. Alarid appeals from an order of the district court affirming the

Commissioner's decision denying his application for Social Security disability and

Supplemental Security Income benefits (SSI).  Mr. Alarid applied for these benefits

with a protected filing date of June 30, 2010.  The agency denied his applications,

and he requested a hearing before an administrative law judge (ALJ).

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

After a de novo hearing the ALJ reviewed the hearing testimony and the medical evidence and issued a decision denying benefits. She determined that Mr. Alarid had severe impairments, including "degenerative joint disease of the left knee, status post ACL repair with partial replacement, low back pain, and degenerative disc disease of the lumbar spine." Aplt. App., Vol. I at 28. In light of these impairments, the ALJ found that he retained the residual functional capacity (RFC) to perform only light work with the following restrictions:

> [He] can stand/walk for four hours and sit six hours in an eight-hour workday. There are no lift/carry restrictions. He has the ability to change position and sit/stand as needed two to three times per hour, approximately every twenty to thirty minutes. The claimant can never operate foot pedals with his left foot (non-[dominant]). He can occasionally climb stairs, climb ramps, stoop, kneel, crouch, or crawl. He can never climb ladders. He should avoid concentrated exposure to extreme cold and avoid all exposure to unprotected heights.

*Id.* at 29.

The ALJ further found that with his RFC, Mr. Alarid could return to his past relevant work as a prison security guard, private security guard, and lot manager/detailer. She therefore concluded that Mr. Alarid was not disabled within the meaning of the Social Security Act. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.

We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *See Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir.

- 2 -

2010).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotation omitted).

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled.  *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing process).  The claimant bears the burden of establishing a prima facie case of disability at steps one through four.  *See id.* at 751 n.2.  The ALJ decided this case at step four.  The burden was therefore on Mr. Alarid to show that his impairment made him unable to perform his past relevant work.  *See Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir. 1993).

Mr. Alarid raises three issues on appeal.  He challenges the legal and evidentiary basis for the ALJ's determinations concerning (1) his credibility, (2) the weight to be assigned to the medical opinion evidence, and (3) his ability to perform his past relevant work.  In addressing these issues, we consider only those of his arguments that were properly preserved in the district court and that are adequately developed in his briefing on appeal.

## I.  Credibility Determination

The ALJ found that Mr. Alarid's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms" were not fully credible.  Aplt. App., Vol. I at 31.  Mr. Alarid challenges several of the ALJ's stated reasons for reaching this conclusion.

### A.  Failure to Pursue Physical Therapy

First, he challenges the ALJ's statement concerning his failure to pursue physical therapy for his knee problems.  In her summary of Mr. Alarid's hearing testimony, the ALJ noted that he "testified he went to physical therapy in 2010 for his left knee but only went for one week.  He said this did not help.  He stopped going because one week was all that was paid for." *Id.* at 30.  Later, as part of her credibility analysis, the ALJ noted that Mr. Alarid had "only attended one week of physical therapy even though it was recommended for treatment.  This suggests that his symptoms may not have been as serious as has been alleged in connection with this application and appeal." *Id.* at 35.

Had the ALJ stopped there, we would have no problem with her analysis.  But she continued by stating:

> To obtain disability benefits, a claimant must follow treatment
> prescribed by his or her physician if the treatment would restore the
> claimant's ability to work.  If the claimant does not follow prescribed
> treatment without a good reason, the claimant will not be found
> disabled. *The regulations do not list financial inability to pay for*

- 4 -

> *treatment as an acceptable excuse for failing to follow prescribed treatment.*

*Id.* (emphasis added).

Mr. Alarid contends that the highlighted language misstated the law. It is true that a claimant's inability to pay for treatment can constitute an acceptable justification for failing to follow prescribed treatment, *see Threet v. Barnhart*, 353 F.3d 1185, 1190-91 n.7 (10th Cir. 2003) ("[I]nability to pay may provide a justification for a claimant's failure to seek treatment"), and that the ALJ is ordinarily required to address such financial considerations before drawing adverse inferences from the claimant's failure to seek or pursue treatment, *see* Soc. Sec. Ruling 96-7p, 1996 WL 374186, at \*7-\*8 (1996) ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide. . . .The individual may be unable to afford treatment and may not have access to free or low-cost medical services").

But examining this argument in its relevant context, what is missing here to support Mr. Alarid's claim is a reference to any evidence that he failed to pursue treatment because he could not afford it. A careful review of the hearing testimony cited by the ALJ reveals that Mr. Alarid did not actually say he could not afford physical therapy. He testified as follows:

Q    And have you tried any physical therapy for any of your impairments?
A    Yes, I have.
Q    When did you last do physical therapy?

A      My last physical therapy was in 2010 and that was for my left knee.
Q      And how many times roughly did you go for?
A      They only paid for one week.
Q      Did that help?
A      No, it didn't.

Aplt. App., Vol. I at 72.

Mr. Alarid did not say he could not afford to pay for additional treatment once the week that was already paid for was over. Nor did the ALJ deny him benefits for failure to pursue treatment. Instead, as part of her credibility analysis, she noted Mr. Alarid's failure to seek out further physical therapy beyond the week that had been paid for, considering it as an adverse credibility factor. *Cf. Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (distinguishing between denial of benefits for failure to follow prescribed treatment and the ALJ's evaluation of failure to seek treatment as part of the credibility analysis). Viewed in this light, we discern no harmful error in the ALJ's discussion of this point.

### B. Limited Treatment

The ALJ rejected Mr. Alarid's allegations in part because of the limited treatment he received. She stated:

> The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. The record also reveals that the treatment has been generally successful in controlling his symptoms. His back treatment has been essentially routine and/or conservative in nature, consisting of only medications and injections.

Aplt. App., Vol. I at 35.

Mr. Alarid complains that this statement is inaccurate concerning his knee problems because he consented to and was awaiting knee replacement surgery at the time of the hearing. The record shows that he was recommended for this surgery in October 2010 and was told to obtain dental clearance. At the time of the hearing nine months later, he had still not had the surgery because he had not obtained the required dental clearance, a fact the ALJ cited as evidence that his symptoms may not have been as serious as alleged. Thus, to the extent knee surgery is "the type of medical treatment one would expect for a totally disabled individual," the ALJ's observation that he had not received that surgery at the time of the hearing was both accurate and legitimate. *Id.*

Mr. Alarid also contends the ALJ erred in relying on his "routine" and "conservative" back treatment, which he argues could be attributed to a lack of surgical alternatives rather than to relief he obtained through conservative treatment. The record reveals that Mr. Alarid received limited, short-term relief of his back pain when treated with medications and physical therapy. Although his pain continued, his doctors later concluded that he would "not benefit from surgical intervention at this time." *Id.*, Vol. II at 356. It is unclear whether they reached this conclusion because they believed surgery would provide no relief or because they concluded it was unnecessary, or both. In any event, at the same time that they reached this conclusion they also approved him for the more conservative measure of a lumbar facet injection.

Mr. Alarid underwent a lumbar facet injection about a month before his July 2011 hearing before the ALJ, and obtained an 80 percent reduction in back-pain symptoms. This is the most recent medical evidence in the record concerning back pain. Given the record evidence concerning the treatment he received for his back pain and the relief he experienced from that treatment, the ALJ's conclusion that Mr. Alarid's treatment was "essentially routine and/or conservative in nature, consisting only of medications and injections," *id.* Vol. I at 35, was supported by substantial evidence.

Mr. Alarid next complains that the ALJ improperly required objective verification of his subjective complaints of severe pain. The ALJ stated:

> Although the claimant and his friends/family have described daily activities that are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

*Id.* at 36-37.

In *Keyes-Zachary v. Astrue*, 695 F.3d 1156 (10th Cir. 2012), we considered nearly identical language citing the lack of objective verification of the claimant's limited daily activities with any reasonable degree of certainty. We found no reversible error in that language because "[t]he ALJ merely considered the lack of

- 8 -

objective verification as a *factor* in assessing the value of [the claimant's] hearing testimony concerning her limited daily activities." *Id.* at 1168. The same is true here.

In addition, to say that it was difficult to attribute Mr. Alarid's limited daily activities to his medical condition is not to require him to establish his level of pain by objective evidence. The ALJ made the commonsense observation that the medical evidence, which included a detailed consulting physician's opinion concerning Mr. Alarid's functional capacities, did not provide support for his testimony concerning his limited daily activities.

Mr. Alarid next challenges the ALJ's statement that "[t]he scant, infrequent and non-descript medical evidence of record simply does not support the severity of limitation alleged by the claimant." Aplt. App., Vol. I at 35-36. Mr. Alarid contends this conclusion is inconsistent with surgical notes that revealed more arthritis than anticipated, positive MRI findings concerning his back and knee, and frequent complaints of pain to his treating providers. But even if the ALJ's characterization of the medical evidence as "scant, infrequent and non-descript" is debatable, we have no difficulty with the gist of her statement, which concerned whether the medical evidence supported the severity of the limitations alleged by Mr. Alarid. In concluding that it did not, the ALJ cited numerous factors, including a negative straight-leg raising test, the consistency of physical examination results with his RFC, lack of EMG testing, lack of a physician's recommendation for an assistive

device, and lack of restrictions placed on his activities by any treating physicians. Her conclusion concerning the severity of Mr. Alarid's impairments was thus supported by substantial evidence in the medical record. In citing what he contends is contrary evidence, Mr. Alarid is asking us to reweigh the evidence, which we cannot do. *See Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) ("We review only the *sufficiency* of the evidence, not its weight.").

## C. Side Effects of Medications

Mr. Alarid complains that the ALJ's statement that he "has not alleged any side effects from the use of medications," Aplt. App., Vol. I at 37, is inconsistent with a statement he made to a treating health-care provider that Flexeril made him "feel jumpy as he was having a hard time sleeping," *id.*, Vol. II at 317. But when he made this statement, the medical provider at least temporarily discontinued his use of Flexeril. Further, when Mr. Alarid was asked at the ALJ hearing about his medications, including Flexeril, he said that he suffered no side-effects from the Flexeril. Thus, Mr. Alarid has identified no reversible error in the ALJ's statement concerning alleged side-effects of his medications.

## D. Typicality of Symptoms

Finally, Mr. Alarid assigns error to the ALJ's statement that his "symptoms are *unusual and not typical* for the impairments that are documented by objective medical findings in this case." *Id.*, Vol. I at 38 (emphasis added). He argues that in

using this phrase, "[t]he ALJ was essentially substituting her opinion for the medical opinion of Mr. Alarid's doctors." Aplt. Opening Br. at 28.

We are uncertain which symptoms the ALJ was referring to and how she determined that they were unusual for Mr. Alarid's particular impairments. That is the peril of a boilerplate statement such as this one, which hampers our task of judicial review. But as to the specific objection raised, concerning whether the ALJ improperly substituted his opinion for Mr. Alarid's treating physicians, we do not find reversible error.

According to the Commissioner's regulations, the ALJ is charged with using the objective medical evidence as "a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work." 20 C.F.R. § 404.1529(c)(2). The regulations further provide that "[b]ecause symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions which you, your treating or nontreating source, or other persons report, *which can reasonably be accepted as consistent with the objective medical evidence* and other evidence, will be taken into account . . . in reaching a conclusion as to whether you are disabled." *Id.* § 404.1529(c)(3) (emphasis added). Thus, the regulations empower and require the ALJ to determine which symptoms are reasonably consistent with the objective medical evidence. Although Mr. Alarid construes the phrase "unusual and not typical" to suggest that the ALJ considered

factors beyond the specific medical evidence in the record, we think it more appropriate to read this phrase as in accordance with the ALJ's duty to inquire concerning the reasonable consistency of symptoms with the medical evidence. Thus, "unusual and not typical for" equates to "not reasonably consistent with." Viewed in this way, the ALJ's statement was in accordance with her regulatory duties and does not constitute reversible error.

## II.  RFC and Medical Opinion Evidence

### A.  Dr. Dilullo's Opinion

The ALJ assigned great weight to the opinion of consulting physician Dr. Angelo Dilullo, who examined Mr. Alarid on September 4, 2010, and assessed his physical functional abilities.  The record contains no other physician's assessment of these functional abilities that directly contradicts Dr. Dilullo's findings. Nevertheless, Mr. Alarid argues that Dr. Dilullo's opinion was not entitled to great weight because it was overshadowed by subsequent medical findings.  In particular, he claims that the ALJ did not take into account (1) the observations from his arthroscopic knee surgery on September 16, 2010; (2) a treating physician's opinion, expressed on October 26, 2010, that Mr. Alarid was a good candidate for total knee arthroplasty; and (3) the additional symptom of hand numbness that manifested itself between the date of Dr. Dilullo's examination and the date of the ALJ's decision.

Mr. Alarid fails to explain how either the arthroscopic-knee-surgery results or his treating physician's opinion concerning his being a candidate for arthroplasty

undermined the value of Dr. Dilullo's opinion and, in particular, Dr. Dilullo's assessment of his physical capacities. He complains that his surgery, 12 days after Dr. Dilullo examined him, "demonstrated significant arthritis," Aplt. Opening Br. at 28, but fails to refer to any medical evidence showing why that would prevent him from performing the limited standing permitted by Dr. Dilullo's findings and incorporated in the ALJ's RFC assessment. Further, in reaching his opinion Dr. Dilullo acknowledged that Mr. Alarid "is slated for another knee arthroscopy in the near future to try and temporize until he needs a total knee replacement." Aplt. App., Vol. II at 267. He further opined that "[a]t some point he will undergo a total knee replacement of the left knee, *which I think will significantly improve his function.*" *Id.* at 270-71 (emphasis added). Thus, Mr. Alarid fails to show that his treating physician's opinion that he was a good candidate for arthroplasty is inconsistent with Dr. Dilullo's opinion concerning his functional abilities.

Mr. Alarid complains that Dr. Dilullo's opinion failed to assign any limitation arising from his upper-extremity numbness. But the record reflects only a single complaint of upper-extremity numbness, and contains no medical diagnosis for the complaint. Thus, the medical evidence does not support the claimed impairment.

### B. Limitations Not Reflected in RFC

Mr. Alarid contends the ALJ improperly failed to consider and to include in her RFC assessment the limitations from numbness in his upper and lower extremities; the side effects of his medications, including sleepiness; and his anxiety

and depression. "It is beyond dispute that an ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination." *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006); *see also* 20 C.F.R. § 416.923; § 416.908. In formulating his RFC assessment, the ALJ must discuss the combined effect of all the claimant's medically determinable impairments, both severe and nonsevere. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013).

As we have noted, the medical evidence does not support Mr. Alarid's claim of a medically determinable impairment involving upper-extremity numbness. In addition, the ALJ's decision did not fail to discuss this fact. She stated:

> [Mr. Alarid's] complaints of hand numbness and swelling are not supported by the medical evidence. The record reflects no actual treatment for this alleged impairment. The only mention of this in the record was a complaint to Lynn Shields of arm and hand numbness on June 9, 2011. Subjective complaints alone are insufficient to establish a medically determinable impairment.

Aplt. App., Vol. I at 28 (citation omitted). Substantial evidence thus supports the omission from the RFC assessment of limitations due to upper-extremity weakness.

As for Mr. Alarid's allegation of lower-extremity numbness, it also apparently rests on a single complaint to nurse practitioner Lynn Shields, on June 9, 2011.[1] No separate diagnosis was made, nor was any treatment ordered for this condition. Most importantly, Mr. Alarid fails to show how consideration and discussion of this

---

[1] On January 31, 2011, Mr. Alarid reported "paresthesias in his L lower extremity," Aplt. App., Vol. II at 295, but it is unclear whether his complaints at that time included numbness. The doctor who examined him felt this problem "could be related to his knee." *Id.*

- 14 -

alleged impairment would have resulted in any change to the ALJ's RFC assessment, which already contained precise, medically supported restrictions based on his knee problems. Given these circumstances, he fails to show any harm from the omission by the ALJ of a discussion of this isolated complaint of lower-extremity numbness. *See Keyes-Zachary*, 695 F.3d at 1161-63, 1165 (any error in ALJ's failure to weigh medical opinions was harmless when ALJ's RFC assessment was generally consistent with opinions).

We have already rejected Mr. Alarid's argument that the ALJ committed reversible error in stating that he "has not alleged any side effects from the use of medications." Aplt. App., Vol. I at 37. To the extent he challenges the ALJ's failure to discuss this issue adequately, that claim must fail as well. When discussing Mr. Alarid's hearing testimony, the ALJ specifically and correctly noted that at the hearing, Mr. Alarid stated he had no side-effects from his medications.[2]

The record contains occasional references to anxiety and depression. The ALJ mentioned the observation of Mr. Alarid's physician in April 2011 that he was "depressed and irritable since his unemployment ran out and he was denied

---

[2]    Mr. Alarid stated at the hearing that he stopped taking Flexeril and Baclofen a month earlier because "[i]t was starting to upset my stomach taking everything." Aplt. App., Vol. I at 67. But he develops no specific argument that the ALJ failed to discuss stomach complaints as a side-effect of his medicine.

In questionnaires he filed with the agency, Mr. Alarid stated that his medications caused him drowsiness, dizziness, and stomach problems. But he did not mention drowsiness or dizziness when asked at the hearing whether he suffered side-effects from medicines.

disability," *Id.* at 34, but the ALJ did not identify either anxiety or depression as a medically determinable impairment.

Mr. Alarid's attorney gave an opening statement at the hearing describing the impairments that made him unable to work, but he did not mention either anxiety or depression. When asked at the hearing what conditions prevented him from working, Mr. Alarid did not include either anxiety or depression. Given these omissions, and given the paucity of medical evidence to support the existence of a medically determinable mental impairment that restricted Mr. Alarid's ability to work, *see Wells*, 727 F.3d at 1065 & n.3 (requiring consideration and discussion of medically determinable mental impairments that restrict a claimant's work activities), any error in the ALJ's analysis on this point was harmless.

**III. Finding Concerning Past Relevant Work**

Much of Mr. Alarid's argument concerning this issue consists of contentions involving the Dictionary of Occupational Titles and the classification of Mr. Alarid's work as he actually performed it. These arguments were not raised in the district court, and thus are not preserved for our appellate review. The remaining argument contends that the ALJ's hypothetical question to the vocational expert (VE) did not accurately reflect all of Mr. Alarid's impairments. The substance of this argument is found in a single sentence: "The ALJ's errant reliance on Dr. Dilullo's opinion caused the ALJ to omit any lifting and carrying limitations as well as limitations arising from debilitating pain." *Id.* at 33.

The ALJ's hypothetical question to the VE must accurately reflect the "impairments and limitations that were borne out by the evidentiary record." *Newbold v. Colvin*, 718 F.3d 1257, 1268 (10th Cir. 2013) (internal quotation marks and brackets omitted). We have already upheld the ALJ's credibility determination, which concluded that Mr. Alarid's statements concerning "the intensity, persistence and limiting effects" of his pain were "not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." Aplt. App., Vol. I at 31. Mr. Alarid has failed to show that the ALJ's conclusions concerning pain were unsupported by substantial evidence. Nor does he point to any medical evidence that required the ALJ to include lifting and carrying limitations within his RFC. We therefore reject his challenge to the hypothetical question to the VE and the ALJ's resulting reliance on the VE's findings and opinion.

The judgment of the district court is affirmed.

Entered for the Court

Harris L Hartz
Circuit Judge