FILED
United States Court of Appeals
Tenth Circuit

September 27, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

TIMOTHY A. GREDE,

        Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

        Defendant-Appellee.

No. 10-6260
(D.C. No. 5:09-CV-00987-HE)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior
Circuit Judge.

Timothy A. Grede appeals the district court's order upholding the

Commissioner's denial of social security disability benefits. He argues that the

Commissioner failed to conduct a proper analysis of his residual functional

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

capacity (RFC).[1] Because the Commissioner's decision is supported by substantial evidence and the law was properly applied, we affirm.

On October 6, 2004, Mr. Grede applied for disability benefits asserting an onset date of June 1, 2002, due to kidney stones, high blood pressure, renal and intestinal problems, hemorrhoids, pulmonary problems, and left hand problems. His insured status ended on September 30, 2002, requiring him to show the disability onset during that four-month period and continuing for twelve months. *See Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (stating claimant must show disability on or before expiration of date of insured status).

After receiving denials of disability benefits at all stages of administrative review, Mr. Grede appealed to the district court. That court reversed and remanded for further proceedings. An administrative law judge (ALJ) held a supplemental hearing and concluded again that Mr. Grede was not disabled. In doing so, the ALJ applied the five-step sequential evaluation process for determining disability. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (summarizing five-step process). After determining at step one that Mr. Grede was not engaging in substantial gainful employment, the ALJ found at step two that Mr. Grede had the following severe impairments:

---

[1]     RFC is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(c).

chronic diarrhea of unknown cause, chronic scrotum/testicular pain requiring the February 2003 left spermatocelectomy and bilateral vasectomy, chronic kidney stones and ureter blockage requiring the August 2002 ureterocscopy [sic] and cystoscopy, chronic hemorrhoids requiring a prior history of repetitive surgery, a history of traumatic injuries of abdomen and pelvic area requiring prior repetitive surgical procedures, hypertension controlled, and diabetes controlled . . . .

Aplt. App., Vol. 2 at 476. The ALJ determined that Mr. Grede had non-severe complaints of hand pain and depression. Finding that none of the severe impairments met a listed impairment, the ALJ then proceeded to step four, determining that Mr. Grede had the RFC to perform skilled, light and sedentary work, if he was allowed ready access to a restroom due to having two diarrhea instances per day and if he was allowed the use of a padded chair when required to sit. The ALJ concluded that because Mr. Grede's past relevant work as a fast food manager fit within his RFC, he could return to that work.

After the Appeals Council declined review, the ALJ's decision became the decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On judicial review, the district court upheld the Commissioner's decision. This appeal followed.

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson*, 602 F.3d at 1140. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Id.* (internal quotation marks omitted). "We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence . . . , but we [do] not reweigh the evidence or substitute our judgment for the Commissioner's." *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008) (quotation omitted).

Mr. Grede argues that the ALJ failed to conduct a proper step-four analysis because the ALJ did not consider the effects of his mental impairments and diarrheal problems when assessing his RFC. We consider first Mr. Grede's argument that the ALJ did not consider at step four the effects of his mental impairments. In doing so, we start with the ALJ's discussions at step two.

At step two, the ALJ noted that from April 2002 through June 28, 2002, Mr. Grede sought counseling for a depressive disorder and family relationship problems, and the June 28 treatment record indicated he was making progress toward coping skills and dealing with his spouse. The ALJ then found:

> There is no showing that during the relevant adjudication period . . . the claimant sought or required any additional treatments for depression or any other significant mental health impairment. Nor was he described as persistently exhibiting significant mental and/or emotional deficits or any persistent deficits of social interactions. It appears that the claimant did not undergo any additional mental evaluations until the June 2006 psychological evaluation [when he] was assessed as suffering marked deficits of his ability for social interactions. Thus it appears that the claimant's severe social interaction deficits did not manifest themselves until well-after the relevant adjudication period.

Aplt. App., Vol. 2 at 477; *see also id.* at 475 (discussing medical evidence). Based on these findings, the ALJ determined that during the relevant time period, Mr. Grede did not "suffer mental impairments imposing more than mild restrictions of activities of daily living; mild difficulties of maintaining social functions; mild difficulties of maintaining concentration, persistence, and pace; and no repeated or extended episodes of decompensation and deterioration in work or work-like s[e]ttings." *Id.* at 477. Based on all of these findings, the ALJ concluded that any mental impairment was not severe.

At step four the ALJ was required to consider all limiting effects of all impairments, even the mental impairments he found not severe at step two. *See Wilson*, 602 F.3d at 1140; 20 C.F.R. § 404.1545(a)(2), (e); S.S.R. 96-8p, 1996 WL 374184, at *5. Although the ALJ did not specifically make further findings concerning a mental impairment at step four, he stated that he had considered all of Mr. Grede's symptoms and the medical evidence. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (noting "our general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter"). In light of the discussion at step two, the limited medical evidence, and the ALJ's determination at step four that Mr. Grede could engage in unlimited communications and interpersonal interactions, we agree with the district court that the ALJ properly considered Mr. Grede's mental impairment. *Cf. Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (noting that when ALJ discusses

medical evidence in detail and that evidence does not conflict with ALJ's conclusions, need for ALJ to expressly analyze evidence is weakened).

We reject Mr. Grede's contention that the ALJ should have considered expressly his GAF score of 50.[2] The ALJ was not required to discuss in detail each piece of evidence. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). And his duty to discuss was further diminished because there was no explanation to support the score. *See id.* at 1010 (deciding that ALJ must discuss "significantly probative evidence he rejects").

We also reject Mr. Grede's contention that the ALJ should have considered expressly at step four his problems with social interaction, even though that diagnosis came four years after his insured status ended, because social-interaction problems may have been present during the relevant period. Mr. Grede submits that the ALJ improperly formed his own medical opinion about Mr. Grede's social deficiencies and their onset. It is true that mental health evidence from a period of time after a claimant meets the earnings requirement

---

[2] The GAF evaluates a person's "overall level of functioning." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision 4th ed. 2000). A GAF score of 41-50 indicates "[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Id.* at 34 (bolding omitted).

may be relevant to show the severity or continuity of his impairments existing before expiration of the earnings requirement or could identify impairments that may reasonably have been present and have imposed limitations. *See Baca v. Dep't of HHS*, 5 F.3d 476, 479 (10th Cir. 1993). That, however, is not the case here. The mental health records from 2006 do not indicate that any social-interaction problems were present during the time Mr. Grede was insured. Indeed, Mr. Grede indicated in his disability report that he had not seen anyone for emotional or mental problems limiting his ability to work.

Lastly, we consider Mr. Grede's argument that the ALJ incorrectly determined that he needed access to a restroom due to diarrhea only twice during a working day and failed to consider that his need to use a restroom more frequently restricted his ability to maintain employment, especially at a fast food restaurant. In 2004, Mr. Grede reported to one medical provider that he had four to twenty diarrhea episodes per day. The ALJ found this to be inconsistent with the medical evidence, and determined that Mr. Grede was not credible. In specific, the ALJ found that no cause for the diarrhea had been determined, the diarrhea problem was not so significant as to require surgical or other correction, Mr. Grede's weight was stable, he had no episodes of acute dehydration or fatigue, bile salt binding agents provided effective treatment, and he had chronic diarrhea only two to four times per day with one or two of those times occurring during the workday. No medical evidence conflicts with these findings. Because

the ALJ's findings are based on substantial evidence in the record, we will not second guess them.[3] *See Cowan*, 552 F.3d at 1185.

The judgment of the district court is AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge

---

[3]    Mr. Grede contends that the ALJ failed to develop the record and therefore was unable to make necessary findings. We decline to address this contention, because it is conclusory, undeveloped, and raised only in his brief's conclusion. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived.").